UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUMA ENERGY CARIBE, LLC, | |
| Plaintiff, | CIVIL NO. 3:20-cv-_____ |
| v. | TRADEMARK INFRINGEMENT; TRADEMARK DILUTION; BREACH OF CONTRACT; DAMAGES AND CONTRACTUAL ATTORNEYS' FEES |
| SAMUEL MUSA CORTES; MOHAMED ODEH; ODEH PETROLEUM, INC; GUAYNABO FUEL CORPORATION, INC., | |
| Defendants. | |

## <u>VERIFIED COMPLAINT</u>

**TO THE HONORABLE COURT:**

**COMES NOW** the plaintiff, Puma Energy Caribe, LLC (hereinafter "PUMA"), through the undersigned counsels, as and for its Verified Complaint against the defendants herein, respectfully states, alleges, and prays as follows:

### I.    JURISDICTION AND VENUE

1.    This Honorable Court has original federal question jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1338, as this case involves substantial claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*. and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125, *et seq*.  This Court also has jurisdiction over the instant Complaint pursuant to 28 U.S.C. §1332(a)(2), as this case involves citizens of a State and citizens and subjects of a foreign state, and the matter in controversy exceeds the sum value of $75,000.00.  Plaintiff also alleges supplemental jurisdiction over the causes of action pleaded under the laws of the

1

Commonwealth of Puerto Rico, as claims so related to other issues in the action that they form part of the same case or controversy, and over which this Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1367.

2.      Venue is proper in this Court pursuant to 28U.S.C. §1391 (b) and (c), given that defendants are citizens and are doing business in the Commonwealth of Puerto Rico and the claims alleged in this Complaint arose in this district.

## II.  THE PARTIES

3.      PUMA is a limited liability company organized pursuant to the laws of the Commonwealth of Puerto Rico.   PUMA's physical address is Road #28, Km 2.0, Luchetti Industrial Park, Bayamón, Puerto Rico 00961, and its postal address is P.O. Box 11961, San Juan, PR 00922. The sole member of PUMA is Puma Energy Americas Holdings, B.V., domiciled and registered in the Netherlands, and it is neither a citizen nor domiciled in the Commonwealth of Puerto Rico.   PUMA has the exclusive rights to use and protect the trade name PUMA, and its related trade names, trade dress and trademarks, in the distribution and marketing of gasoline and petroleum related products, among others, through authorized dealers throughout the Commonwealth of Puerto Rico.   PUMA is duly authorized to use the trade name PUMA, as well as the use of its other gasoline and petroleum related products' trademarks, and the use of the PUMA Service Stations service marks and trade dress.

4.      PUMA is authorized to use and required to protect the trademark "Puma", a federally-registered trademark.   More specifically, it is registered with the United States Patent and Trademark Office under Registration No. 4,929,953.   Also, the Puma trademark for PUMA Lubricants appeared registered in the United States Patent and Trademark Office under

2

Registration No. 5,607,814.   These registrations are in full force and effect, unrevoked and uncanceled.   Copies of the certificates of registration for the marks are attached, marked as **Exhibits 1a and 1b**, and are incorporated by reference to this Complaint.   Plaintiff has also requested the registration of certain additional PUMA trademarks with the United States Patent and Trademark Office, including among others: PUMA Evolve (U.S. Serial Number 88289220); PUMA design (U.S. Serial Number 88736143); and PUMA standard character (U.S. Serial Number 887386120).   Copies of the certificates of application for the marks are attached and are marked as **Exhibits 2 (a-c)** and are incorporated by reference to the Verified Complaint.   Plaintiff has continuously engaged in the production, distribution and sale of petroleum related products under the business name of "Puma" for over nine (9) years in Puerto Rico and has held the Exclusive Trademark License for Puerto Rico Jurisdiction since its incorporation as an affiliate entity.   *See* **Exhibit 3**, Letter dated December 19, 2017, ratifying said agreement.   All PUMA names, logos, marks, trade dress and other intellectual property referenced hereto will be jointly referred to as the "PUMA Marks".   As a result of its widespread, continuous, and exclusive use of the PUMA Trademarks to identify its goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the PUMA Marks.

5.      Plaintiff also has a supplemental claim for PUMA trademarks under for the Puerto Rico Trademarks Act, 10 PR ST. §223, *et seq.* PUMA Trademarks are registered in the Puerto Rico Trademark Office under Registrations Number 63553, 63554 and 63545. Copies of Registration Certificates are Attached marked as **Exhibit 4 (a-c).** Plaintiff also has the following related Puerto Rico Trademark Office Registrations: Ion Puma Diesel (Reg. 200756), PUMA Maxxima (Reg. 213565), PUMA Maximum Power (Reg. 203337), PUMA Iondiesel (Reg.

215733), Pasión por calidad ( Reg. 213431), Puma Gas (Regs. 208354 and 208356) and Shop Express (Reg. 201079). Copies of certificates and applications are attached marked as **Exhibit 5 (a-h)**. Plaintiff has also requested the registration of certain additional PUMA trademarks with the Puerto Rico Trademark Office, including among others: PUMA Fast Pay (Reg. 215374-36-0), Super 7 (App. No. 215290 and 215300), PUMA Lubricants ( App. No. 220409-04-0), and Evolve (App. No.  231986-04-0). As a result of its widespread, continuous, and exclusive use of the "Puma" Trademark in Puerto Rico to identify its goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting state statutory and common law rights to the "Puma" Marks.

6.     Upon information and belief, Defendant Samuel Musa Cortes (hereinafter referred to as "Defendant Musa") is the new occupant and operator of the gasoline service station located at Avenida Esmeralda, Esq. Calle D, Los Frailes, Guaynabo, Puerto Rico, and who is <u>not</u> authorized to distribute, sell or otherwise use or dispose of PUMA's property or products, including the equipment owned by PUMA that remains at said service station.

7.     Defendant Odeh Petroleum, Inc. is a corporation organized and existing pursuant to the laws of the Commonwealth of Puerto Rico, whose physical address is Avenida Esmeralda, Esq. Calle D, Los Frailes, Guaynabo, Puerto Rico and postal address is #1437 Ferrer y Ferrer St., San Juan, PR 00921.  Defendant Odeh Petroleum, Inc. was a contracting party to a Supply and Commodatum Agreement with PUMA for the operation of a Puma branded gasoline service station at Avenida Esmeralda, Esq. Calle D, Los Frailes, Guaynabo, Puerto Rico, which was known as Puma Service Station #802 (hereinafter, the "Station").

8.     Defendant Guaynabo Fuel Corp. is a corporation organized and existing pursuant to the laws of the Commonwealth of Puerto Rico, duly authorized to do business in the

4

Commonwealth of Puerto Rico, whose physical address is Avenida Esmeralda, Esq. Calle D, Los Frailes, Guaynabo, Puerto Rico and postal address is #1437 Ferrer y Ferrer St., San Juan, PR 00921, which through its president Mohamad Awadallah Odeh entered into a lease agreement on February 27, 2018, for the two parcels of land, plus a gasoline service station, a minimarket and facilities subject of this Verified Complaint, i.e., the Station.

9.      Defendant Mohamed Awadallah Odeh is the President of both, Odeh Petroleum Corporation and Guaynabo Fuel Corp., and was the person designated to operate the Station. Mohamed Awadallah Odeh and his 2 corporation (Odeh Petroleum, Inc. and Guaynabo Fuel Corp.) may be jointly referred to as the "Odeh Defendants".

### III.    NATURE OF THE ACTION

9.      This is a civil action for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), the Puerto Rico Trademarks Act, 10 PR ST. §223, et seq.; for trademark dilution in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 (a) and (c), and for damages resulting from a breach of contract and the illegal possession of PUMA's equipment.

10.     PUMA seeks a temporary restraining order, a preliminary injunction and a permanent injunction to (a) enjoin defendant Musa from continuing to illegally exhibit the PUMA Marks, which include but are not limited to its name, logos, marks and trade dress, at the Station or anywhere, because defendant's acts disparage, dilute, and otherwise damage the value of the PUMA Marks; (b) enjoin defendant Musa from continuing to use any and all PUMA equipment still at the Station, including but not limited to PUMA's Underground Storage Tanks (hereinafter "USTs"); (c) enjoin defendant Musa from dispatching and/or selling PUMA branded gasolines

stored in the USTs of the Station as of May 1, 2020; (d) allow PUMA to enter the premises to remove its equipment and property; and (e) allow PUMA to enter the premises and carry out a "cap and secure" as to both USTs.

11.     PUMA seeks a temporary restraining order, a preliminary injunction and a permanent injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, instructing defendant Musa to immediately cease to display all PUMA marks at the service station because they are selling PUMA brand gasoline through a PUMA branded station without authority to use the marks in that fashion, and violating PUMA's exclusive rights over the PUMA Marks in Puerto Rico.

12.     PUMA also seeks to protect the environment and from its absolute liability pursuant to Article 45 of the Code, Environmental Public Policy, P.R. Laws Ann. Tit 12, §8004n, and Title 42 U.S.C. §§6991 to 6991m, Regulation of Underground Storage Tanks.

13.     PUMA also seeks a finding from this Honorable Court that Defendants Mohamed Odeh (hereinafter "Odeh") and Odeh Petroleum, Inc. (hereinafter "Odeh Petroleum") breached the Supply and Commodatum Agreement (hereinafter "SCA") entered into between the parties on June 1, 2014, plus seeks an award of damages, costs and contractual attorney's fees.

14.     In addition, PUMA also seeks damages under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. Sec. 5142, and costs and attorney's fees, whether contractual, statutory, or otherwise.

## IV.     STATEMENT OF FACTS

### A.  PUMA's Acquisition of the Station's Assets

15.     On May 11, 2011, PUMA entered into a Third Amendment to Asset Purchase

Agreement with Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P. and Gulf Petroleum Refining (Puerto Rico) (hereinafter the "Third Amendment".)  *See* **Exhibit 6**, Third Amendment to Asset Purchase Agreement.

16.     Pursuant to Third Amendment, PUMA specifically acquired, as to the Station (i.e., Service Station No. 802), the Seller's property, including tanks, pumps, well reservoirs, etc., and other personal property owned by the Sellers. **Exhibit 6**, at pages 3-4, ¶ e. i & ii.

17.     On May 11, 2011, PUMA and Caribbean Petroleum Corporation, Caribbean Petroleum Refining, LP and Gulf Petroleum Refining (Puerto Rico) signed a Bill of Sale which specifically identified as Acquired Assets, storage tanks, pumps and any other personal property owned by the Sellers located on, in, or under the Station. *See* **Exhibit 7**, Bill of Sale dated May 11, 2011, at ¶ 2.

18.     On May 31, 2011, PUMA notified Mr. Wifki Odeh (former Gulf retailer and defendant Mohamed Odeh's brother) of the change in ownership of the property at Station 802, which also included the transfer of ownership of the USTs.  *See* **Exhibit 8**, Letter dated May 31, 2011 addressed to Wifki Odeh.

19.     On December 5, 2011, PUMA filed with the Commonwealth of Puerto Rico's Environmental Quality Board (hereinafter "EQB") an amendment to the Notification for Underground Storage Tanks, identification number 02-98-0110, notifying the change in ownership of the USTs at the Station to PUMA.  *See* **Exhibit 9**, EQB's Notification for Underground Storage Tanks. The USTs in question are two (2) in number, with and estimated total capacity of 10,000 gallons each, made out of plastic reinforced with glass fiber.

20.     In addition to the USTs, as of April 2020, PUMA had other property at the Station which has not been returned by defendants.  *See* <u>Unsworn Declaration of Claudia Peña</u>, and Peña's Exhibit A,  PUMA's Property List for Station 802.

**B.  The Supply and Commodatum Agreement**

21.     On June 1, 2014, PUMA and co-defendant Odeh Petroleum, Inc. entered into a Supply and Commodatum Agreement as to the Station (hereinafter, the "SCA") for the operation of a Puma branded gasoline service station.  *See* **Exhibit 10**, <u>Supply and Commodatum Agreement</u>. Pursuant to the SCA, defendant Odeh Petroleum, identified as "the Retailer," agreed to display the PUMA Marks and to exclusively sell Puma products during the term of the agreement.  *See* **Exhibit 10**, at p. 1and p. 5, ¶ IV C.

22.     The SCA was for a term of seventy-one (71) months, starting on June 1, 2014 through April 30, 2020, and thereafter on a month-to-month basis.  *See* **Exhibit 10** at p. 4, ¶ II A.

23.     The SCA provides that the Retailer could only use the marks, registered marks, trademarks, names, service distinctions, and/or color patterns only and exclusively within the Station and to identify the same as a PUMA gasoline service station. *See* **Exhibit 10**, at p. 5, ¶. IV C.

24.     The SCA provides that the Retailer would comply with all applicable environmental laws and regulations. *See* **Exhibit 10** at p. 11, ¶ IX A.  These contractual provisions are designed to facilitate PUMA's compliance with applicable federal and state environmental laws, rules, and regulations, which require compliance with strict monitoring and record keeping programs.

25.     The SCA recognizes that PUMA would have the right at any moment during the duration of the Agreement and even after its termination, to remove all structures, accessories, equipment and other properties belonging to PUMA, or that were installed in the property object of this Agreement by PUMA during the duration of the agreement or any other previous agreement, or any extension or renewal of the same, including fuel pumps and underground tanks.  In case the property is removed, PUMA would not be under any obligation to pay any sum to the Retailer. *See* **Exhibit 10**, at p. 17, XIII C.

26.     The SCA also states that the Retailer expressly gives up any right of accession that it has or could claim over or with relation to any such equipment. *See* **Exhibit 10**, at p. 18, XIII F.

27.     The SCA also states that once the agreement expires or is terminated, PUMA may enter the Station to remove its property. *See* **Exhibit 10** p. 23, ¶ XVII.

28.     The SCA also states that upon its termination or non-renewal, the Retailer shall immediately cease to market and sell the Products and to use them in any way.  Without constituting a limitation to the scope of the foregoing, the Retailer shall: (1) at PUMA's option and at Retailer's expense, remove and return to PUMA all PUMA identifications to be removed from its Station and securely store the PUMA identifications until PUMA reposes them; (2) at PUMA's option and at the Retailer's expense, remove and return to PUMA, remove and permanently destroy or paint over all PUMA Identification, display ad, color scheme, and any other material containing PUMA Identifications (whether used in buildings, equipment, tanks, trucks, automobiles or stamped papers, among others); and (3) return the equipment provided by PUMA for use at the Retailer's Station.  *See* **Exhibit** 10, at p. 27, ¶ XXVI A.

### C. Communications Between the Parties Regarding the Expiration of the SCA

29.     On December 17, 2019, Defendant Odeh Petroleum (thru Mohamed Odeh) notified PUMA of his determination not to renew the Supply and Commodatum Agreement upon its expiration on April 30, 2020, pursuant to Clause II, ¶¶ A and C.  *See* **Exhibit 11**, Letter dated December 17, 2019.

30.     On February 4, 2020, PUMA responded acknowledging the December 17, 2019 letter. PUMA also notified the Retailer that pursuant to the SCA, once it expired, PUMA would need to enter the Station to remove its property.  Unlike the rest of PUMA's property at the Station, the USTs may not be removed until the Puerto Rico Environmental Quality Board ("EQB") approves their removal.  Consequently, PUMA also reminded the Retailer that PUMA owns the USTs located at the Station and warned the Odeh defendants that they did not have any authorization from PUMA to use the USTs to store any other gasoline brand that was not either PUMA or other brands duly approved in writing by PUMA. *See* **Exhibit 12**, Letter dated February 4, 2020.

31.     On February 7, 2020, the Odeh co-defendants replied to PUMA's February 4, 2020 letter demanding that within five (5) days PUMA provide evidence that it was the owner of the Station's USTs. *See* **Exhibit 13**, Letter dated February 7, 2020.

32.     On February 12, 2020, PUMA replied referring to the documents granting ownership of the USTs to PUMA and to the May 31, 2011 letter.  In addition, PUMA informed the Odeh defendants that the USTs were registered under PUMA's name with the EQB.  PUMA ended the letter by reaffirming its availability to meet and discuss the process to obtain the permits for the removal of the UST.  *See* **Exhibit 14**, Letter dated February 12, 2020.

33.     On March 11, 2020, PUMA again replied pointing out to the Odeh co-defendants to documents that unequivocally establish ownership of the Station's USTs and invited Odeh to review the same at PUMA's offices.  In addition, the Odeh co-defendants were informed that PUMA had no intention of selling the USTs and that it had already commenced the process to obtain the permits to remove the USTs with the EQB.  *See* **Exhibit 15**.  Letter dated March 11, 2020.

34.     On March 16, 2020, the Odeh co-defendants sent yet another letter to PUMA regarding the documents references in PUMA's March 11 letter and requesting the production of said documents on or before March 20, 2020.  These are the same documents that PUMA offered to show Odeh in person at PUMA's offices.  *See* **Exhibit 16**, Letter dated March 16, 2020.

35.     Considering that a general lock down was then in place due to the COVID-19 pandemic, and having Odeh visit PUMA's offices was impractical, PUMA wrote to the Odeh Defendants on March 30, 2020, providing a secure web link to digital copies of the documents previously referenced as establishing PUMA's ownership of the Station's USTs.  In addition , the Odeh defendants were again warned that they did not have any authorization from PUMA to use the USTs to store any other gasoline brand that was not either PUMA or other brands duly approved in writing by PUMA.  *See* **Exhibit 17**, Letter dated March 30, 2020..

36.     With regards to the process of removal of the USTs from the Stations, by April 16, 2020 PUMA had already begun the process of securing EQB approval.  However, the lockdown caused by the CORAVID-19 pandemic and the lack of any alternative process from the governmental agencies involved means that PUMA has little visibility as to where is the process.  However, once the EQB is fully operational, PUMA will be able to finalize the process.

37.     On April 20, PUMA received a letter from defendant Musa making an offer to acquire the USTs from PUMA.  *See* **Exhibit 18, p. 2**, Letter dated April 20, 2020.  At the time of this letter, and to this date, PUMA has no contractual or business relationship with Defendant Musa pertaining to the Station.  However, Defendant Musa is currently in control of the Station and is the person who has repeatedly refused PUMA access to remove its property from the Station.  *See* Unsworn Declaration of Fernando Rodriguez.

38.     On April 27, 2020, Defendant Musa sent yet another letter to PUMA with a formal offer to buy PUMA's equipment at the Station (including the USTs), and this time warning that if PUMA refused, he would demand that PUMA pay him rent for three (3) months for PUMA's presence at the Station.  *See* **Exhibit 19**, Letter dated April 27, 2020.

39.     On April 29, 2020 PUMA fulfilled an order of product by the Retailer and as a result delivered Puma branded gasoline to the Station. *See* **Exhibit 20**, Delivery Report for Station 802 for the month of April 2020, and **Exhibit 21**, Sales invoice for Station 802 dated April 30, 2020.

40.     As previously communicated to the Odeh Defendants, upon the expiration of the SCA, on May 1, 2020, personnel from PUMA visited the Station to coordinate the orderly removal of its property from the site.  They were informed that they would not be given access to remove anything from the Station.  Nevertheless, they noticed that the Station was still operating and selling gasoline to customers using PUMA's equipment and still bearing PUMA's distinctive trade dress and some of PUMA's trademarks, including PUMA® and EVOLVE®.  While at the Station, PUMA personnel generated an Inventory Report from the Stations Automatic Tank Gauging (ATG) system which reflected that the USTs still had 16,244 gallons of Puma branded gasoline

which was being sold to customers past the expiration of the SCA.  *See* <u>Unsworn Declaration of Jose Valentin</u>, and Exhibit A to Valentin's Declaration, Inventory Report receipt dated May 1, 2020.

41.     On May 2, 2020, PUMA contractors and personnel visited the Station in order to remove PUMA's equipment from the Station and following PUMA's safety protocol, to cap and secure PUMA USTs, in order to avoid any safety, health or environmental hazard due to the use of said USTs.  *See*   https://www.epa.gov/ust/resources-ust-owners-and-operators#closing. However, they were denied access to the Station.  In fact, access to PUMA property was physically blocked to PUMA.  <u>Unsworn Declaration of Fernando Rodriguez</u>.

42.     Since May 1, 2020, Defendant Musa has partially covered some of PUMA's signage at the Station, but continues to use PUMA's equipment and to display the brand marks and trade dress and distinctive color scheme even though co-defendant Musa has no business relationship with PUMA, including no agreement to purchase or dispense gasoline fuel, and more importantly, no permission from PUMA.  Furthermore, Defendant Musa blocked PUMA from accessing the Station to remove its property, which includes the PUMA Marks.  The result of that action is that co-defendant is selling EVOLVE gasoline, that was sold prior to April 30, 2020, using PUMA's equipment at a gasoline service station still bearing PUMA's trade dress and some of the PUMA Marks, being depicted and shown in the structures, including the canopy and the pumps, without any authorization to do so.

43.     Defendant Musa's action in selling EVOLVE branded gasoline, through PUMA owned and branded equipment, has continued to date although Defendant Musa is not authorized to do so.  As of May 8, 2020, the USTs capacity has decreased to from 8755 net gallons to 6866

net gallons in Tank 1 and from 7,789 net gallons to 2,690 net gallons in Tank 2. *See* Unsworn Declaration of Carlos Figueroa and Exhibit A to Figueroa's Declaration, ATG report for May 8, 2020.

44.     Defendants have not adequately covered all signs, gas pumps or removed color scheme, which still leads to identifying Station as a PUMA branded station. *See* Valentin Unsworn Declaration's Exhibit B, Photographs of the Station.

45.     As of today, defendants have continued to illegally exhibit and use the PUMA's Marks.

46.     Furthermore, defendants' actions expose PUMA to potential liability under applicable environmental laws, rules, and regulations, without allowing PUMA to take all appropriate measures to supervise and ensure compliance with the same.

47.     Defendant Musa has no right to use PUMA's marks or equipment and must discontinue the unauthorized use and exhibition of the PUMA Marks, and the Odeh Defendants are under the obligation to surrender all of PUMA's signs and marks.  *See* Unsworn Declaration of Fernando Rodriguez.

48.     Upon the expiration of the SCA, the Odeh defendants no longer have any right to use PUMA's marks or equipment and must discontinue the unauthorized use and exhibition of the PUMA Marks, and defendant Odeh Petroleum is contractually obligated to tender to PUMA all of PUMA's signs, marks and property currently at the Station.

49.     As of today, May 8, 2020, the Odeh Defendants have failed to comply with the abovementioned ongoing obligations of the expired agreement, and co-defendant Musa has

retained possession and continues to illegally exhibit and use the PUMA Marks.  *See* Valentin

Unsworn Declaration's Exhibit B, Photographs of the station.

## V.    CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION: VIOLATION OF THE LANHAM ACT AND TRADEMARK DILUTION REVISION ACT OF 2006

50.    Paragraphs 1 to 49 are hereby incorporated by reference.

51.    Defendant Musa is using the PUMA Marks; and advertising his business with the

PUMA Marks, among other unauthorized acts like selling PUMA products.

52.    The use of the PUMA Marks or color patterns is causing confusion and/or mistake

and is deceiving consumers as to the origin, the licensing, and the endorsing by PUMA of co-

defendant Musa's operation, which at this time is affecting not only the value of the PUMA marks,

but also PUMA's goodwill.

53.    Defendant Musa's aforesaid acts constitute trademark infringement in violation of

the Lanham Act, 15 U.S.C. § 1114, et seq., and the Trademark Dilution Revision Act of 2006, 15

U.S.C. § 1125(a).  Said acts tarnish and dilute the PUMA Marks.

54.    Defendant Musa's aforesaid acts have caused PUMA to suffer irreparable injury

and other damages of such a nature that monetary damages alone cannot adequately compensate

PUMA for the loss suffered.

55.    The aforesaid acts by Defendant Musa are greatly and irreparably damaging PUMA

and will continue to be greatly and irreparably damaging to PUMA unless enjoined and compelled

to stop the use of the PUMA Marks and products by this Honorable Court because PUMA is

without an adequate remedy at law.

56.     Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

**B. SECOND CAUSE OF ACTION: TRADEMARK INFRINGEMENT IN VIOLATION OF SECTION 43(a) OF THE LANHAM ACT AND THE TRADEMARK DILUTION REVISION ACT OF 2006**

57.     Paragraphs 1 through 56 are hereby incorporated by reference.

58.     Defendant Musa continues to use the PUMA Marks; and continues to advertise his business with the presence of PUMA Marks, which, at this time, the sale of PUMA gasoline products is closed to consumers affecting not only the value of the PUMA Marks, but also PUMA's goodwill.

59.     Defendant Musa's aforesaid acts tend to represent falsely that Defendant Musa's services and products are legitimately approved by PUMA, which constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114, et seq., and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(a).

60.     The aforesaid acts by Defendant Musa are greatly and irreparably damaging PUMA and will continue to be greatly and irreparably damaging to PUMA unless enjoined by this Honorable Court because PUMA is without an adequate remedy at law.

61.     Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

**C. THIRD CAUSE OF ACTION: VIOLATION OF THE TRADEMARK DILUTION REVISION ACT OF 2006**

62.     Paragraphs 1 to 61 are hereby incorporated by reference.

63.     Defendant Musa is still exhibiting signs that have the color patterns that identify a PUMA Service Station, which are part of the PUMA Marks, in a manner that is still clearly visible

to the public, while selling PUMA branded gasoline products without authorization to do so. Defendant Musa does not have any authority to sell PUMA branded gasoline, because he is not a PUMA distributor.

64.     This depiction of the Station and the PUMA Marks in such a negative way constitutes dilution, disparagement, tarnishment and diminishment of the PUMA trademarks, service marks, and products lines—all proscribed by Section 43 (c) of the Lanham Act, 15 U.S.C. § 1114, et seq., and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 et seq.

65.     Defendant Musa's acts have caused and will continue to cause dilution, disparagement, diminution, and other damages to the value of goodwill represented by, and of the distinctiveness of the PUMA Marks, in violation of Section 43 (c) of the Lanham Act, 15 U.S.C. § 1114, et seq., and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 et seq.  Passing off PUMA branded gasoline under an unbranded station or selling PUMA branded gasoline under an unauthorized PUMA branded station, affects PUMA directly its goodwill and brand recognition.

66.     Defendant Musa's acts constitute, therefore, a violation of Section 43 (c) of the Lanham Act, 15 U.S.C. § 1114, et seq., and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 et seq.

67.     Defendant Musa's aforesaid acts have caused PUMA to suffer injury and damages of such a nature that they could not be adequately compensated by an award of monetary damages alone.

68.     The aforesaid acts by Defendant Musa are greatly and irreparably damaging PUMA and will continue to cause great and irreparable damages to PUMA unless enjoined by this Honorable Court.

69.     Because an award of monetary damages cannot fully and adequately compensate PUMA for its losses, PUMA is without an adequate remedy at law.

70.     Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

### D. FOURTH CAUSE OF ACTION: COMMON LAW TRADEMARK INFRINGEMENT OF THE PUMA MARKS

71.     Paragraphs 1 to 70 are hereby incorporated by reference.

72.     Defendants' imitation, copying, and unauthorized use of the PUMA Marks are likely to cause, and has caused, confusion, deception, and mistake among the consuming public and trade by creating the erroneous impression that the goods or services sold, offered for sale, distributed, or advertised by defendants have been manufactured, approved, sponsored, endorsed or guaranteed by, or are in some way affiliated with, plaintiff.

73.     By reason of the foregoing, Defendants have committed and are continuing to commit common law trademark infringement.

### E. FIFTH CAUSE OF ACTION: COMMON LAW UNFAIR COMPETITION

74.     Paragraphs 1 to 73 are hereby incorporated by reference.

75.     Defendants' conduct is likely to confuse, mislead, or deceive purchasers or potential purchasers, and constitutes common law unfair competition.

**F.  SIXTH CAUSE OF ACTION: PRELIMINARY AND PERMANENT INJUNCTION INSTRUCTING DEFENDANTS TO SURRENDER THE PUMA SIGNAGE AND MARKS TO PUMA**

76.    Paragraphs 1 to 75 are hereby incorporated by reference.

77.    The Odeh Defendants have refused to surrender the PUMA marks and signage in violation of the Supply and Commodatum Agreement.  Furthermore, Defendant Musa is currently maintaining the Station open to consumers, using PUMA's equipment and gasoline products while at the same time exhibiting the PUMA Marks.

78.    Defendants' aforesaid acts have caused PUMA to suffer injury and damages of such a nature that could not be adequately compensated by an award of monetary damages alone.

79.    The aforesaid acts by defendants are greatly and irreparably damaging PUMA and will continue to cause great and irreparable damages to PUMA unless and until enjoined by this Honorable Court pursuant to Rule 65 of the Federal Rules of Civil Procedure.

80.    Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

**G.  SEVENTH CAUSE OF ACTION: PRELIMINARY AND PERMANENT INJUNCTION INSTRUCTING DEFENDANTS TO ALLOW PUMA TO COMPLY WITH ENVIRONMENTAL REQUIREMENTS**

81.    Paragraphs 1 to 80 are hereby incorporated by reference.

82.    Article 45(b) of the Environmental Public Policy Law ("EPP"), P.R. Laws Ann. tit. 12, § 8004n, specifically defines crude oil and its derivatives as a combustible fuel and a dangerous substance.

83.     Article 46 of the EPP does not exempt from responsibility any party that may be responsible for an oil spill or any other type of dangerous substance.  In essence, it imposes a type of absolute responsibility, in this case, on PUMA.  See P.R. Laws Ann. tit. 12, § 8004o.

84.     Additionally, Article 45 of the EPP holds responsible any interstate entity that as owner transfers title, possession and the right to use the property to another through lease, license or permit.  See P.R. Laws Ann. tit. 12, § 8004n (b)(8)(B).

85.     The Regulation No. 4362 of the Control of Underground Storage Tanks of the Commonwealth of Puerto Rico's Environmental Quality Board ("EQB") is also applicable. Pursuant to this regulation, the EQB together with the Environmental Protection Agency, hold responsible the retailer operator, as well as the owner of the USTs or other equipment that causes the fuel spill.

86.     Furthermore, under Title 42 U.S.C. § 6991 (h)(6)(A), "Whenever costs have been incurred by the Administrator, or by a State pursuant to paragraph (7), for undertaking corrective action or enforcement action with respect to the release of petroleum from an underground storage tank, the owner or operator of such tank shall be liable to the Administrator or the State for such costs."  With respect to owner, it is defined as "in the case of an underground storage tank in use on November 8, 1984, or brought into use after that date, any person who owns an underground storage tank used for the storage, use, or dispensing of regulated substances."  See 42 U.S.C. § 6991(4)(A).

87.     Even more, the Administrator of the Environmental Protection Agency "may issue an order requiring compliance within a reasonable specified time period or the Administrator may commence a civil action in the United States district court in which the violation occurred for

appropriate relief, including a temporary or permanent injunction." See Title 42, U.S.C. § 6991e(a)(1). Any owner who fails to comply with the requirements or standards promulgated by the Administrator of the Environmental Protection Agency "shall be subject to a civil penalty not to exceed $10,000 for each tank for each day of violation." See Title 42, U.S.C. §6991e(d).

88. It is worth nothing that PUMA has not been allowed on the premises to verify the status of the equipment. This denial of access creates an imminent threat of misuse of the equipment that can lead to a fuel spill, or even an explosion, causing serious environmental harm to property and citizens.

89. In addition, the USTs at the Station have a monitoring system called automated tank gauge system ("ATG") under the gasoline pumps and in the underground storage tanks. The purpose of this system is to monitor and detect any leaks of product to the ground. This system is connected to PUMA's Central Offices. By accessing this system, PUMA has been able to ascertain that PUMA branded gasoline has been sold at the Station after May 1, 2020., See Unsworn Declaration of Carlos Figueroa. Consequently, since monetary damages cannot remedy this type of damage, an injunction is necessary.

90. Because an award of monetary damages cannot fully and adequately compensate PUMA for its losses, PUMA is without an adequate remedy at law and a preliminary and permanent injunction should be issued by this Honorable Court.

## H. EIGHT CAUSE OF ACTION: COLLECTION OF MONIES AND BREACH OF CONTRACT

91. Paragraphs 1 to 90 are hereby incorporated by reference.

92. Under Article 1044 of the Puerto Rico Civil Code (the "Code"), P.R. Laws Ann. tit. 31, § 2994: "[o]bligations arising from contracts have legal force between the contracting

parties and must be fulfilled in accordance with their stipulations."  The courts may not relieve a

party of an obligation to do whatever it agreed to do by contract, provided said contract is legal,

valid and without defect.  Article 1053 of the Code, P.R. Laws Ann. Tit. 31 ¶ 3017, provides that

a

> "[p]ersons obliged to deliver or to do something are in default from the moment when the creditor demands the fulfilment of their obligation, judicially or extrajudicially. However, the demand of the creditor, in order that default may exist, shall not be necessary: (1) If the obligation or law declares it expressly; (2) If by reason of its nature and circumstances it may appear that the fixing of the period within which the thing was to be delivered or the service rendered was a determinate cause to constitute the obligation. In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him. From the time one of the persons obligated fulfills his obligation the default begins for the other party."

93.     Here, the SCA is a contract that is legal, valid and without defect because it

complies with the elements of a contract: to wit, consent, object and cause.  *See* Article 1213, P.R.

Laws Ann. tit. 31, § 3331.

94.     Under Article 1059 of the Puerto Rico Civil Code: "Indemnity for losses and

damages includes not only the amount of the loss which may have been suffered, but also that of

the profit which the creditor may have failed to realize, reserving the provisions contained in the

following sections."  P.R. Laws Ann. tit. 31, § 3023.

95.     Those who in fulfilling their obligations are guilty of fraud, negligence, or delay,

and those who in any manner whatsoever act in contravention of the stipulations of the same, shall

be subject to indemnify for the losses and damages caused thereby.  *See* Article 1054, P.R. Laws

Ann. tit. 31, § 3018.

96.     In the present case, Plaintiff has sustained damages because of the Odeh Defendants' breach of the SCA, specifically Clauses XIII C, XVII, and XXVI A. *See* **Exhibit 10**. As a result of said breach, co-defendants have caused serious economic damages.

97.     In addition, upon information or belief, this product was already resold to customers.

98.     One or more of the defendants ordered gasoline trucks from PUMA at or near the end of April 2020 (before the expiration of the SCA) to sell at the Station, which is the subject of this lawsuit.

99.     Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

## I.   NINTH CAUSE OF ACTION: INDEMNIFICATION AND DAMAGES

100.     Paragraphs 1 to 99 are hereby incorporated by reference.

101.     If PUMA is made a party to any lawsuit or any legal action as a result of any act of co-defendants or as a result of Defendant Musa's continued possession of the Station, defendants must indemnify and hold harmless PUMA from all expenses, fines, suits, proceedings, claims, losses, damages, liabilities or actions of any kind or nature, including but not limited to, costs and attorneys' fees.

102.     PUMA currently has no control or access to the Station, nor can it monitor any acts and/or omissions by defendants as to the management of hazardous fuel products, for which PUMA may be liable under federal and state environmental laws, rules and regulations, among others.

103.    Defendants must be made liable for any expense, cost, loss or damage sustained by PUMA as a consequence of any claim made by any person or entity as a result of defendants' deceptive and illegal acts, including but not limited to, gasoline spills, leaks from the tanks, fires, explosions, slip and falls, and the like.

**J. TENTH CAUSE OF ACTION: STATUTORY DAMAGES FOR VIOLATION OF RIGHTS UNDER LANHAM ACT AND TRADEMARK DILUTION REVISION ACT OF 2006**

104.    Paragraphs 1 to 103 are hereby incorporated by reference.

105.    Defendant Musa is using the PUMA Marks; and advertising his business with the PUMA Marks, among other unauthorized acts like selling PUMA products.

106.    The use of the PUMA Marks or color patterns is causing confusion and/or mistake and is deceiving consumers as to the origin, the licensing, and the endorsing by PUMA of co-defendant Musa's operation, which at this time is affecting not only the value of the PUMA marks, but also PUMA's goodwill.

107.    Defendant Musa continues to use the PUMA Marks; and continues to advertise his business with the presence of PUMA Marks, which, at this time, the sale of PUMA gasoline products is closed to consumers affecting not only the value of the PUMA Marks, but also PUMA's goodwill.

108.    Defendant Musa's aforesaid acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, et seq., and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(a).  Said acts tarnish and dilute the PUMA Marks.

109.    PUMA is entitled to the recovery of statutory damages when there is  a violation of any right of the registrant of a mark registered in the Patent and Trademark Office under the

24

Lanham Act, or a violation under section 1125(a) or (d) of the Trademark Dilution Revision Act of 2006, or a willful violation under section 1125(c)of the Trademark Dilution Revision Act of 2006.

110.     Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

## K.  ELEVENTH CAUSE OF ACTION: VIOLATION OF THE PUERTO RICO TRADEMARK ACT, 10 P.R. ST. §223, *ET SEQ.*

111.     Paragraphs 1 to 110 are hereby incorporated by reference.

112.     Defendant Musa is using the PUMA Marks; and advertising his business with the PUMA Marks, among other unauthorized acts like selling PUMA products.

113.     The use of the PUMA Marks or color patterns is causing confusion and/or mistake and is deceiving consumers as to the origin, the licensing, and the endorsing by PUMA of co-defendant Musa's operation, which at this time is affecting not only the value of the PUMA marks, but also PUMA's goodwill.

114.     Defendant Musa continues to use the PUMA Marks; and continues to advertise his business with the presence of PUMA Marks, which, at this time, the sale of PUMA gasoline products is closed to consumers affecting not only the value of the PUMA Marks, but also PUMA's goodwill.

115.     Defendant Musa's aforesaid acts constitute trademark infringement in violation of the Puerto Rico Trademark Act, 10 P.R. St. §223, et seq.

116.     PUMA is entitled to the recovery of statutory damages when there is a violation of said Act pursuant to § 223w.

117.    Consequently, this Honorable Court should enjoin Musa from continuing his illegal pattern of actions and grant PUMA the relief requested in this Complaint.

## L.  TWELVETH CAUSE OF ACTION: DAMAGES, CONTRACTUAL ATTORNEYS' FEES AND EXPENSES

118.    Paragraphs 1 to 117 are hereby incorporated by reference.

119.    As a result of defendants' willful and malicious conduct, PUMA is entitled to recover from defendants its damages, attorneys' fees and expenses incurred in bringing this action, pursuant to 15 U.S.C. §§ 1114(1) and 1117(a), 15 U.S.C. § 1125(a) and (c), and the Puerto Rico Civil Code.

120.    Since defendants have also breached their contractual duties in an intentional and willful manner, PUMA is entitled to recover any and all damages resulting from said breach, and which include all attorneys' fees to be incurred in prosecuting this case.  See Exhibit 10, p. 23, ¶ XVII.

**WHEREFORE,** Puma respectfully requests that this Honorable Court:

1)      issue and enter a temporary restraining Order:

        a.  ordering Defendants, their agents, servants, employees, representatives, and all others in active concert or participation with them to cease using PUMA's Property, as itemized in Peña's Unsworn Declaration, Exhibit A;

        b.  ordering Defendants, their agents, servants, employees, representatives, and all others in active concert or participation with them to immediately cease using the PUMA Marks, altering the PUMA Marks, and selling any product under Puma emblems, logos, trade dress, and

    c.   order Defendants to allow PUMA access to the Station in order to remove PUMA's Property and to perform a "cap and secure" to the USTs and fuel lines;

2)    issue and enter a preliminary and permanent injunction order and a judgment:

    a.   ordering the Defendants, their agents, servants, employees, representatives, and all others in active concert or participation with them that they are enjoined and restrained during the pendency of this action, and permanently thereafter, from using the PUMA Marks, altering the PUMA Marks, selling any product under Puma emblems, logos, trade dress, and using PUMA's equipment and property;

    b.   Ordering the Defendants to stop diluting and tarnishing the PUMA Marks, goodwill, and reputation; and

    c.   Ordering Defendants to immediately stop and refrain from tarnishing, obliterating, and disparaging the PUMA Marks or other identifying marks by selling misbranded gasoline products and to allow Puma further access into all the stations to take mitigative and protective action;

3)    Puma requests that this Honorable Court order a speedy injunction hearing of this action and advance it on the calendar in accordance with Rule 57 of the Federal Rules of Civil Procedure, in as much as it involves only issues of law on undisputed or relatively undisputed facts, and that an injunction be entered instructing Defendants to immediately surrender Puma's property in the Station;

4)      PUMA further requests that this Honorable Court order a speedy injunction hearing of this action and advance it on the calendar in accordance with Rule 57 of the Federal Rules of Civil Procedure, in as much as it involves only issues of law on undisputed or relatively undisputed facts, and that a preliminary injunction order be entered instructing Defendants to immediately fully cease using or displaying the PUMA Marks at the Station;

5)      That Odeh Petroleum Inc. be ordered to compensate PUMA for its breach of contract in an amount not less than $1,000,000.00, and attorneys' fees, interest and other expenses in an amount not less than $250,000.00; all for a total of no less than $1,250,000.00;

6)      That the Odeh Defendants and Defendant Musa be ordered to compensate PUMA for their actions as described in the Complaint in an amount not less than $1,000,000.00, and attorneys' fees, interest and other expenses in an amount not less than $250,000.00; all for a total of no less than $1,250,000.00;

7)      PUMA requests that the Defendants indemnify, reimburse and/or compensate Puma for all expenses, losses, damages or liabilities, including but not limited to, costs and attorneys' fees, that PUMA sustains or could sustain because of any act or omission by them that may have caused or may cause harm to third parties;

8)      With regard to Counts One thru Twelve, that the Court award PUMA damages, fees, costs, and pre and post judgment interest in an amount to be determined.

9)      Finally, that PUMA be awarded such other and further relief as is just and equitable, and the payment of costs, interest, and attorney fees.

**RESPECTFULLY SUBMITTED**.

**Dated:**  May 8, 2020

<div style="margin-left: 40%;">

S/Alberto G. Estrella
Alberto G. Estrella, Esq.
agestrella@estrellallc.com
Bar No. 209804

S/Kenneth C. Suria
Kenneth C. Suria, Esq.
ksuria@estrellallc.com
Bar No. 213302

S/Francisco J. Ojeda Diez
Francisco J. Ojeda Diez, Esq.
fojeda@estrellallc.com
Bar No. 211108
**ESTRELLA, LLC**
P.O. Box 9023596
San Juan, Puerto Rico 00902-3596
Telephone: (787) 977-5050
Facsimile: (787) 977-5090

*Counsel for Plaintiff*
**PUMA ENERGY CARIBE, LLC**

</div>

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Mario Ricardo Sierra Varela, of legal age, married, General Manager for Puma Energy

Caribe, LLC, and resident of San Juan, Puerto Rico, hereby state under penalty of perjury, pursuant

to the Laws of the United States of America, 28 U.S.C. § 1746, that I have read the foregoing

Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief

and/or pursuant to the information and documents in possession of PUMA and/or its employees,

all allegations herein contained are true and correct.

Mario Ricardo Sierra Varela

Executed in San Juan, Puerto Rico, on the following date: 5/8/2020